UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------

JUSTIN HENRY, individually and on behalf of
other persons similarly situated who were
employed by WARNER MUSIC GROUP
CORP.,

                        Plaintiffs,

                -against-

WARNER MUSIC GROUP CORP., and
ATLANTIC RECORDING CORPORATION,

                  Defendants.

--------------------------------------------------

Case No. 13 Civ. 5031 (PGG)


# MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION TO REMAND


**VEDDER PRICE P.C.**
Laura Sack
Lyle S. Zuckerman
Michael Goettig
1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700
*Attorneys for Defendants*
*Warner Music Group Corp. and*
*Atlantic Recording Corporation*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ............................................................................................................................ 3

I.     DEFENDANTS HAVE ESTABLISHED JURISDICTION UNDER CAFA
WITH "REASONABLE PROBABILITY"............................................................... 3

II.    PLAINTIFF HAS FAILED TO ESTABLISH THAT ANY EXCEPTION TO
REMOVAL UNDER CAFA APPLIES ................................................................... 7

     A.    Plaintiff Has Failed to Establish that Either the Home State or Local
Controversy Exception Applies ........................................................................ 8

     B.    Plaintiff Has Failed to Establish that the Court Should Apply Its
Discretion in Remanding the Matter "In the Interests of Justice" ...................... 11

          1.    The Claims Asserted Indisputably Involve Matters of National or
Interstate Interest.................................................................................. 12

          2.    The Putative Class Overlaps in Significant Part With a Second
Putative Class in a Collective Action Before This Court, Whose
Claims are Governed by Federal Law ..................................................... 14

          3.    The Claims Have Been Pleaded in a Manner Which Seeks to
Avoid Federal Jurisdiction...................................................................... 15

          4.    A Significant Portion of The Putative Class is Comprised of
Citizens of a Second State..................................................................... 16

          5.    Plaintiff's Counsel Filed A Collective Action Asserting The Same
or Similar Claims on Behalf of Many of the Same Persons Ten
Days After Filing The Current Action ..................................................... 17

     CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506 (E.D. Pa. 2007)................................ 9, 11

Ava Acupuncture v. State Farm, 592 F. Supp. 2d 522 (S.D.N.Y. 2008)......................................... 3

Blockbuster, Inc. v. Galeno, 472 F.3d 53 (2d Cir. 2006)............................................................... 3

Boyle v. Swann, Inc., 13 Civ. 00645 (W.D. Pa. 2013)................................................................. 13

Commisso v. PricewaterhouseCoopers LLP, 11 Civ. 5713, 2012 U.S. Dist. LEXIS 105151
    (S.D.N.Y. July 26, 2012) ....................................................................................................... 10

DiPonzio v. Bank of Am. Corp., 11-CV-16192, 2011 WL 2693912 (W.D.N.Y. July 11, 2011) .. 6

Donovan v. Am. Airlines, Inc., 686 F.2d 267 (5th Cir. 1982)...................................................... 13

Ervin v. OS Rest. Servs., Inc., 632 F.3d 971 (7th Cir. 2011) ...................................................... 16

Evans v. Walter Indus., Inc., 449 F.3d 1159 (11th Cir. 2006)........................................................ 7

Frazier v. Pioneer Ams. LLC, 455 F.3d 542 (5th Cir. 2006)......................................................... 7

Glatt v. Fox Searchlight Pictures, Inc.,
    11 Civ. 6784, 2013 WL 2495140 (S.D.N.Y. June 11, 2013)............................................. 13, 17

Grant v. Warner Music Group Corp., 13 Civ. 4449 ............................................................ passim

Greenwich Fin. Servs. Distressed Mortgage Fund 3 LLC v. Countrywide Fin. Corp.,
    603 F.3d 23 (2d Cir. 2010)....................................................................................................... 7

In re Hannaford Bros. Co. Customer Data Security Breach Litigation,
    564 F.3d 75 (1st Cir. 2009) .................................................................................................... 10

Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675 (7th Cir. 2006) ................................ 7, 15

Kaplan v. Code Blue Billing & Coding, Inc., Nos. 12-12011, 12-12376 and 12-12679,
    2013 U.S. App. LEXIS 1433 (11th Cir. January 22, 2013)........................................................ 13

Kaplan v. Code Blue Billing & Coding Inc. et al.,
    No. 13-179, 2013 U.S. Briefs 179 (August 7, 2013) ............................................................... 13

Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144 (3d Cir. 2009) ............................................. 7, 11

Knepper v. Rite Aid Corp., 675 F.3d 249 (3d Cir. 2012) ........................................................... 16

Kolari v. New York Presbyterian Hosp., 382 F. Supp. 2d 562 (S.D.N.Y. 2005) ........................ 18

Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.,
    No. 11-904, 2012 U.S. App. LEXIS 9384 (2d Cir. 2012) ......................................................... 4

Mattera v. Clear Channel Communs., Inc., 239 F.R.D. 70 (S.D.N.Y. 2006) ............................... 8

McLaughlin v. Ensley, 877 F.2d 1207 (4th Cir. 1989).................................................................. 13

Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291 (2d Cir. 2000)........................................... 4

Preston v. Tenet Healthsystems Mem. Med. Ctr., Inc., 485 F.3d 804 (5th Cir. 2007).................. 8

Reich v. Parker Fire Prot. Dist., 992 F.2d 1023 (10th Cir. 1993).................................................. 13

Richins v. Hofstra Univ., 908 F. Supp. 2d 358 (E.D.N.Y. 2012) ............................................. 8, 10

Serrano v. 180 Connect Inc., 478 F.3d 1018 (9th Cir. 2007)......................................................... 7

Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234 (2d Cir. 2011)............................ 16

Smith v. Manhattan Club Timeshare Ass'n, 12 Civ. 6363, 2013 U.S. Dist. LEXIS 67835
    (S.D.N.Y. May 10, 2013)............................................................................................... 7, 9, 10

Solis v. Laurelbrook Sanitarium & Sch. Inc., 642 F.3d 518 (6th Cir. 2011)............................... 13

In re Sprint Nextel Corp., 593 F.3d 669 (7th Cir. 2010)................................................................ 8

Tongkook Am. Inc. v. Shipton Sportswear Co., 14 F.3d 781 (2d Cir. 1994)................................. 7

Wang v. Hearst Corp.,
    12 Civ. 793, 2012 U.S. Dist. LEXIS 97043 (S.D.N.Y. July 12, 2012) ............................. 13, 17

Yong Quin Luo v. Mikel, 625 F.3d 772 (2d Cir. 2010).................................................................... 5

## Federal Statutes

28 U.S.C. §1332(d) .................................................................................................... passim

28 U.S.C. §1447......................................................................................................................... 1

29 U.S.C. § 203 ........................................................................................................................ 18

29 U.S.C. § 216(b) ................................................................................................................... 16

## Statutes and State Regulations

N.Y. Labor Law § 190(2) ................................................................................ 1, 2, 20

22 NYCRR § 130-1.1(c) ...................................................................................... 5

## Federal Rules

Fed. R. Civ. P. 11(b)(3)......................................................................................... 5

## Media Publications

Steven Greenhouse, Former Intern Sues Hearst Over Unpaid Work and Hopes to Create a Class
    Action, N.Y. TIMES, February 1, 2012.................................................................... 13

Katie J.M. Baker, Interns Go Out of Vogue at Conde Nast, NEWSWEEK,
    (Oct. 24, 2013, 6:25 PM) ................................................................................. 13

Christopher Zara, Unpaid Intern Lawsuit Against Atlantic Records and Warner Music Group
    Tests Legality of Music Industry Internships,
    INTERNATIONAL BUSINESS TIMES (June 17, 2013, 10:20 AM) .................................... 14

Associated Press, Warner, Atlantic Sued Over Unpaid Internships,
    THE WALL STREET JOURNAL ONLINE (June 17, 2013, 6:06 PM)............................... 14

Eriq Gardner, Warner Music Hit With Class Action Lawsuit Over Interns,
    BILLBOARD.BIZ (June 17, 2013, 6:25 PM) ............................................................ 14

Talk of the Nation, Will Work for Free?  The Future of the Unpaid Internship, NATIONAL PUBLIC
    RADIO, June 19, 2013...................................................................................... 13

## PRELIMINARY STATEMENT

Defendants Warner Music Group Corp. and Atlantic Recording Corporation (collectively, "Defendants") submit this memorandum of law in opposition to the motion by plaintiff Justin Henry ("Plaintiff") to remand this action pursuant to 28 U.S.C. §1447.[1] Plaintiff seeks wages and overtime payments allegedly due under the New York Labor Law (the "NYLL") on behalf of a purported class consisting of Defendants' current and former interns. Plaintiff's decision to commence this action in state court is an obvious effort to disadvantage Defendants by forcing them to defend themselves on two different fronts, as demonstrated by the fact that Plaintiff's counsel commenced a second action seeking damages under the Fair Labor Standards Act (the "FLSA") on behalf of an overlapping class in this Court barely a week later. This sort of procedural gamesmanship runs contrary to the express purpose of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d), 1453 and 1711–1715, as well as fundamental principles concerning the preservation of judicial and party resources, and should not be countenanced by the Court.

Defendants' previous filings in support of removal established federal jurisdiction with "reasonable probability," pursuant to CAFA (*see* Point I, *infra*). Plaintiff has failed to meet Plaintiff's burden to establish that one of the three narrowly-construed statutory exceptions to CAFA applies. Specifically, neither the home state nor the local controversy exception applies because Defendants' evidence confirms that the number of putative class members who are New

---

[1] Defendants do not concede any of the allegations in Plaintiff's Complaint, and will contest many of those allegations when they file a responsive pleading or motion. However, for purposes of the current jurisdictional motion, those allegations constitute binding admissions by Plaintiff. Defendants invoke them only for this limited purpose.

York citizens falls significantly short of the two-thirds required for either exception (*see* Point II.A, *infra*).

Plaintiff has similarly failed to establish that the Court should remand the matter pursuant to the discretionary "interests of justice" exception (*see* Point II.B, *infra*).  Under that exception, the Court weighs the totality of six factors: 1) whether the claims asserted involve matters of national or interstate interest; 2) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States; 3) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction; 4) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants; 5) whether the number of citizens of the State in which the action was originally filed is substantially larger than the number of citizens from any other State; and 6) whether one or more other class actions asserting the same or similar claims on behalf of the same or other persons was filed during the preceding three years.

Weighing these factors makes clear that this Court should retain jurisdiction. Specifically, Plaintiff's claims involve matters of national and interstate interest, as demonstrated by the spate of analogous actions throughout the country brought on behalf of other purported intern classes and the press coverage that those actions (and the current one) have received (*see* Point II.B.1, *infra*).  Second, while Plaintiff's claims will be governed by the NYLL, the putative class in this matter overlaps in significant part with a putative class in a second action whose claims can only be resolved through the application of federal law (*see* Point II.B.2, *infra*). Third, Plaintiff's claims have obviously been pleaded in a manner intended to avoid federal jurisdiction, as his counsel strategically waited a week to file a second action in this Court, when Plaintiff could more easily have filed a single hybrid NYLL/FLSA action here (*see* Point II.B.3, *infra*).  Fourth, while a narrow majority of the putative class members do appear to be New York

citizens, the remainder are not dispersed evenly throughout the country, as New Jersey also has a significant interest, contributing nearly twenty percent of the proposed class (*see* Point II.B.4, *infra*). Moreover, Plaintiff's counsel initiated a second class action in this Court just ten days after filing the current action, a strategic decision which was clearly intended to circumvent the statutory prohibition on commencing class actions in state court within three years of the commencement of a related one in federal court (*see* Point II.B.4, *infra*). Plaintiff has failed to establish that any of the exceptions to CAFA apply, and consequently this Court should retain jurisdiction.

Finally, exposing the parties to essentially duplicative litigation in the state and federal courts cannot be justified. Although commenced under separate statutes, this case and the federal case name the same defendants, and present common factual and legal claims that will be met with common defenses. Moreover, hundreds of purported class members would be eligible to participate in (and thus be subject to discovery in) both cases, and their claimed damages (primarily minimum wage payments) would be largely duplicative. Should this Court retain jurisdiction over this action, Defendants will move to consolidate it for all purposes with the federal action in the interest of further conserving the resources of the Court and the parties.

## ARGUMENT

### I.   DEFENDANTS HAVE ESTABLISHED JURISDICTION UNDER CAFA WITH "REASONABLE PROBABILITY"

Defendants, as the parties seeking to invoke federal jurisdiction, met their burden of establishing jurisdiction within a "reasonable probability." See Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006). See also Ava Acupuncture v. State Farm, 592 F. Supp. 2d 522 (S.D.N.Y. 2008). As detailed in their removal filings, Defendants have demonstrated a "reasonable probability" that: 1) minimum diversity exists (insofar as at least one member of the putative class and defendant are citizens of different states); 2) the number of putative class

3

members is greater than 100; and 3) the amount in controversy exceeds $5,000,000, exclusive of interests and costs. See 28 U.S.C. §1332(d)(2).[2] Plaintiff does not—and could not—contest the existence of minimal diversity or the size of the putative class. Instead, Plaintiff's lone argument is that the amount in controversy does not exceed $5,000,000 but, in contrast to Defendants' evidentiary showing, Plaintiff's arguments are completely speculative.

Specifically, Plaintiff asserts that "Defendants make no statement as to the length or amount of shifts worked by putative class members" and "fail to provide any information regarding the average amount of days or hours worked each week" (Pltf's Brief at p.4) (emphasis in original). However, in determining whether the removing party has satisfied the $5,000,000 jurisdictional threshold, courts "look first to the plaintiffs' complaint and then to [the defendant's] petition for removal." Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000); Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A., No. 11-904, 2012 U.S. App. LEXIS 9384, at *4-*5 (2d Cir. 2012) (in the CAFA context, "[j]urisdictional facts 'such as the amount in controversy' are evaluated on the basis of the pleadings 'viewed at the time when [the] defendant files the notice of removal'").

Here, Plaintiff himself alleges that putative class members "routinely worked in excess of forty hours each week," and that Plaintiff is seeking overtime compensation on behalf of the class (see Complaint ¶¶32, 50-59). These allegations are, in fact, fundamental to the composition of the class that Plaintiff seeks to represent and to the form of recovery Plaintiff seeks. Consequently, the thirty-hour estimate employed by Defendants in support of their calculations is actually a conservative number when measured against Plaintiff's own

---

[2] Additionally, no defendant identified in the Complaint is a state, officer of a state, or a governmental agency, a fact which Plaintiff does not contest. See 28 U.S.C. §1332(d)(5).

allegations.  Plaintiff's counsel previously certified to the truth of Plaintiff's factual contentions pursuant to 22 NYCRR §§ 130-1.1(c) and 130-1.1a,[3] and Plaintiff cannot simply abandon the pleadings that have now become inconvenient.  A plaintiff "cannot seek to deprive a federal court of jurisdiction" by changing the pleadings "once the jurisdictional threshold has been satisfied." Yong Quin Luo v. Mikel, 625 F.3d 772, 776 (2d Cir. 2010) (per curiam) (holding that it is a "well-established rule that a district court's subject matter jurisdiction, once established, is unaffected by post-removal reductions in the amount in controversy") (internal citations omitted).

Plaintiff also incorrectly claims that "Defendants provide no evidence to substantiate the length of time of each worker's employment" (Pltf's Brief at p.4) (emphasis in original).  In fact, Defendants submitted a declaration from a competent affiant (Ioannis Fagkridas, a Human Resources specialist and previous coordinator of the internship program) attesting to the fact that internships are typically scheduled for "one traditional university Fall, Spring or Summer semester" (see Declaration of Ioannis Fagkridas ¶9).  Plaintiff speculates that "most [interns] may have only worked during the summer time, for an eight week period," but provides no factual basis for the Court to conclude that, despite Fagkridas' testimony to the contrary, Defendants actually compressed their entire internship program into the summer months.[4] Moreover, even were the Court to accept this wholly unsubstantiated assertion, doing so would still likely not reduce the total amount in controversy below the jurisdictional threshold as Plaintiff claims.

---

[3] These provisions from the Rules of the Chief Administrative Judge of the New York State Unified Court System, where this action originated, are analogous to Fed. R. Civ. P. 11(b)(3).

[4] Indeed, review of Exhibit A to the Declaration of Ioannis Fagkridas confirms that only a minority of the interns within the putative class participated during the summer months (1,203 of 2,741 interns, or less than 44%).

Specifically, dividing the $5,000,000 damages threshold by the putative class of 2,818 interns produces an average minimum payment of $1,774.31 to each class member. That $1,774.31 average minimum payment divided by the eight-week period which Plaintiff argues "most" interns "may" have worked[5] produces an average weekly payout of $221.79. Dividing this $221.79 figure by the $7.15 hourly minimum wage applicable from the start of the putative class period to July 23, 2009 produces an average workweek of almost exactly 31 hours necessary to reach the damages threshold of $5,000,000 (in fact, during the majority of the class period, from July 24, 2009 onwards, the minimum wage was $7.25 which, if divided into the $221.79 figure above, would produce an even lower average workweek of 30.59 hours). Consequently, even if the average internship only lasted for 8 weeks, the damages threshold would still be satisfied by an average workweek of 31 hours—far less than the 40-plus hours Plaintiff has alleged. Moreover, as noted in Defendants' removal papers, this calculation excludes both the overtime wages Plaintiff alleges he earned and the attorney fees which the NYLL permits Plaintiff's counsel to seek. See DiPonzio v. Bank of Am. Corp., 11-CV-16192, 2011 WL 2693912 (W.D.N.Y. July 11, 2011). Consequently, Defendants have indisputably

---

[5] Plaintiff alleges that he himself worked for Defendants "from October 2007 through May 2008" (Complaint ¶33). Reading this allegation to mean that his start date was at some point between October 1 and October 31, 2007 and that his end date was May 31, 2008, he claims to have worked for Defendants for a period of between 214 and 244 days, or 30 to 34 weeks. Proceeding from Plaintiff's own allegation that he "typically worked five days each week" and "routinely worked from at least 10:00 a.m. until 5:00 or 6:00 p.m.," and assuming both the lesser figure and a one-hour lunch break (and ignoring his allegation that he "was sometimes required to stay later"), Plaintiff claims to have spent between 900 and 1020 hours working for Defendants (see Complaint ¶34). Plaintiff asserts that his claims "are typical of the claims of the putative class" (Complaint ¶19), and applying this figure to the entirety of that class would produce a damages figure significantly in excess of the jurisdictional threshold. Plaintiff's speculative efforts to contest Defendants' calculations are thus belied by the only definitive numbers that he has offered (of course, Defendants do not concede his allegations and, in fact, explicitly contest them but, for purposes of this motion, they are binding upon Plaintiff).

established within a "reasonable probability" that Plaintiff's claim is for more than the minimum jurisdictional amount. Tongkook Am. Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994).

## II.   PLAINTIFF HAS FAILED TO ESTABLISH THAT ANY EXCEPTION TO REMOVAL UNDER CAFA APPLIES

Because Defendants have met their burden of demonstrating federal jurisdiction pursuant to CAFA within a "reasonable probability," the burden shifts to Plaintiff to prove that one of the three statutory exceptions applies: 1) the mandatory local controversy exception; 2) the mandatory home state exception; or 3) the discretionary "interests of justice" exception. See Greenwich Fin. Servs. Distressed Mortgage Fund 3 LLC v. Countrywide Fin. Corp., 603 F.3d 23, 26 (2d Cir. 2010) ("[O]nce the general requirements of CAFA jurisdiction are established, plaintiffs have the burden of demonstrating that remand is warranted on the basis of one of the enumerated exceptions."); Smith v. Manhattan Club Timeshare Ass'n, 12 Civ. 6363, 2013 U.S. Dist. LEXIS 67835 at *7 (S.D.N.Y. May 10, 2013). See also Kaufman v. Allstate N.J. Ins. Co., 561 F.3d 144, 153 (3d Cir. 2009); Serrano v. 180 Connect Inc., 478 F.3d 1018, 1024 (9th Cir. 2007); Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675, 680-81 (7th Cir. 2006); Frazier v. Pioneer Ams. LLC, 455 F.3d 542, 546 (5th Cir. 2006); Evans v. Walter Indus., Inc., 449 F.3d 1159, 1165 (11th Cir. 2006). CAFA's legislative history, as reflected in the report of the Senate Judiciary Committee, further confirms that "if a purported class action is removed pursuant to these jurisdictional provisions, the named plaintiff(s) should bear the burden of demonstrating that the removal was improvident (i.e., that the applicable jurisdictional provisions are not satisfied)." S. Rep. 14, 109th Cong. 1st Sess. 42 (2005). As detailed below, Plaintiff has not met this burden.

**A.      Plaintiff Has Failed to Establish that Either**
**the Home State or Local Controversy Exception Applies**

To establish that remand is required by either the home state or local controversy exception, Plaintiff would have to demonstrate that more than two-thirds of the proposed class are citizens of the state in which the action was originally filed (i.e., New York).  See 28 U.S.C. § 1332(d)(4)(A) and (B).   Although the Second Circuit has yet to reach the issue of the applicable standard of proof, at least one court within the Circuit has held that the "preponderance of the evidence" standard applies to these two CAFA exceptions,  as have other federal appellate courts.  See Richins v. Hofstra Univ., 908 F. Supp. 2d 358, 362 (E.D.N.Y. 2012); In re Sprint Nextel Corp., 593 F.3d 669, 673 (7th Cir. 2010); Preston v. Tenet Healthsystems Mem. Med. Ctr., Inc., 485 F.3d 804, 813 (5th Cir. 2007).

Additionally, this Court has recognized that even where a party seeking remand has demonstrated a "reasonable likelihood" that more than two-thirds of the putative class members are New York citizens, remand under either exception to CAFA is still not justified. Specifically, in Mattera v. Clear Channel Communs., Inc., 239 F.R.D. 70, 80 (S.D.N.Y. 2006), a case in which the class was limited to people who worked in New York, the Court speculated that it was "reasonably likely that more than two-thirds of the putative class members… are citizens of New York."  Nonetheless, the Court declined to apply the home state exception on the basis of this speculative assessment.   Because there was no evidence presented by the party seeking remand with regard to citizenship of the class members, the Court expressly declined to conclude that New York citizens comprised more than two-thirds of the putative class, and held that the home state and local controversy exceptions to CAFA did not apply.

Plaintiff has not even demonstrated a "reasonable likelihood" that more than two-thirds of the putative class members in this case are New York citizens, much less established that this

is the case by a "preponderance of the evidence." In fact, Plaintiff has submitted no evidence at all concerning the class members' citizenship. Instead, Plaintiff merely speculates that individuals wishing to intern for Defendants in New York are likely to be residents of New York: "the majority of the putative class members are presumed to be residents of the State of New York..." (Pltf's Brief at p.1). This inaccurate speculation is no substitute for actual evidence, which Plaintiff must present to overcome the competent evidence that Defendants submitted with their removal papers, demonstrating that at least 45% of the putative class members are not citizens of New York (and that no more than 55% <u>are</u> New York citizens).[6] <u>See</u>, <u>e.g.</u>, <u>Smith</u>, 2013 U.S. Dist. LEXIS 67835 at *14-*15 (concluding that plaintiff's reliance upon "speculation" inadequate to establish citizenship component of home state or discretionary exception). <u>See also</u> <u>Anthony v. Small Tube Mfg. Corp.</u>, 535 F. Supp. 2d 506, 517 (E.D. Pa. 2007) ("plaintiff has offered nothing more than bare assertions in its motion as to the citizenship of the putative class.... these bare assertions are wholly inadequate for the court to evaluate the citizenship of the class.").

Plaintiff further argues that Defendants' evidence "do[es] not consider the individual's current residence, but their address at the time of the internship which could date back as far as 2007..." and speculates that "[t]he addresses presented likely reflect the address of the intern's parents while the intern attended college" (Pltf's Brief at pp.6-7). But Plaintiff identifies no alternative source of information regarding citizenship of the putative class, much less a body of information that would support a different conclusion. Indeed, in an analogous circumstance— where putative class members were transient students, and the defendant university provided to

---

[6] 1,242 of the 2,741 intern addresses listed on Exhibit A to the Fagkridas Declaration are located outside of the state of New York.

the court last known addresses to establish federal jurisdiction pursuant to CAFA—the court held that:

> While Hofstra's information may not reflect with perfect accuracy the current domicile and intent to remain in New York of each and every member of the Plaintiff Class as of the date of the commencement of this lawsuit, Hofstra's information is not, as characterized by the Law School, stale and probative of nothing. Instead, the court considers the information as highly probative of whether or not members of the Plaintiff Class are, indeed, citizens of the State of New York.

Richins, 908 F. Supp. 2d at 363. Taken to its logical conclusion, Plaintiff's argument would not even necessarily support his position, since it is also possible that a significant number of the putative class members who did have New York addresses at the time of their internships had relocated to New York temporarily for the sole purpose of interning with Defendants or attending a university, and did not ultimately settle here following graduation.

Many people from neighboring states such as New Jersey, Connecticut, and Pennsylvania travel into New York to attend school and to hold jobs. Participants in internship programs in New York are equally likely to reside in neighboring states. This fact was amply demonstrated by the evidence Defendants submitted when they removed this case to federal court. Thus, even if the Court were to find Plaintiff's conjecture regarding citizenship sufficient to "create a rebuttable presumption that the citizenship requirement is met," Commisso v. PricewaterhouseCoopers LLP, 11 Civ. 5713, 2012 U.S. Dist. LEXIS 105151, at *16 (S.D.N.Y. July 26, 2012), Defendants have submitted ample evidence to rebut any such presumption, as detailed above. Smith, 2013 U.S. Dist. LEXIS 67835 at *15-16.

Plaintiff certainly could have elected to limit the putative class to citizens of New York who interned for Defendants. See, e.g., In re Hannaford Bros. Co. Customer Data Security Breach Litigation, 564 F.3d 75, 76-77 (1st Cir. 2009). Plaintiff chose not to do so, alleging instead that "[t]his action is brought on behalf of the Plaintiff and a class consisting of each and

every other person who worked for the Defendants as interns, and were thus misclassified as exempt from minimum wage and overtime requirements" (Complaint ¶15.)   Thus, because Plaintiff has presented <u>no</u> evidence of the probable citizenship of the class, and Plaintiff has elected not to limit the class to New York citizens, there is no factual basis from which the Court could conclude that at least two-thirds of the putative class members are citizens of New York. <u>See</u>, <u>e.g.</u>, <u>Anthony</u>, 535 F. Supp. 2d at 508 (concluding that home state exception did not apply, court declined to presume that individuals who worked in Pennsylvania were domiciled in Pennsylvania, noting in part that employees may commute from an out-of-state location).   In sum, it is Plaintiff's burden to prove that the home state or local controversy exception to CAFA applies, and Plaintiff has failed to meet this burden.   Accordingly, the Court should deny Plaintiff's request to remand based on these exceptions.

### B.   Plaintiff Has Failed to Establish that the Court Should Apply Its Discretion in Remanding the Matter "In the Interests of Justice"

In the event that the Court finds, as we respectfully submit it must, that Plaintiff has not met Plaintiff's burden of proving that remand is required by the home state or local controversy exceptions to CAFA, the Court should similarly, in the discretion afforded to it under the statute, retain jurisdiction over classes comprised of between one-third and two-third citizens of the state from which the action was removed (i.e., New York).   28 U.S.C. § 1332(d)(3).   In exercising such discretion, the Court is to consider a number of statutorily enumerated factors based on the totality of the circumstances, and may remand if it concludes that the parties' dispute is "uniquely local," as opposed to the multi-state character of the current action.   <u>See</u> <u>Kaufman</u>, 561 F.3d at 149.   Those factors are as follows:

> (A)   whether the claims asserted involve matters of national or interstate interest;

> (B)   whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

11

(C)    whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D)    whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E)    whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F)    whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

28 U.S.C. § 1332(d)(3).  Here, the totality of the circumstances and the specific application of the factors weigh in favor of this Court retaining jurisdiction.

        **1.**       **The Claims Asserted Indisputably Involve<br>Matters of National or Interstate Interest**

One of CAFA's stated purposes is "to restore the intent of the framers of the [ ] Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction."  Pub. L. No. 109-2, Section 2(b)(2).  It can hardly be disputed that this is an interstate case (since, for example, the putative class has <u>not</u> been limited by Plaintiff to citizens of New York and the evidence reflects that a majority of Defendants' interns are <u>not</u> New York citizens), or that it is of national importance.  In fact, one case in which the same essential issue is raised (that is, whether students who are participating in externships— here, internships—for academic credit are entitled to minimum wage and overtime, if applicable) was recently the subject of a petition for certiorari to the U.S. Supreme Court, following a ruling by the 11th Circuit that the externs were <u>not</u> entitled to wages.  See <u>Kaplan v. Code Blue Billing</u>

12

& Coding Inc. et al., No. 13-179.[7]  Federal courts throughout the country—including within this Circuit—have already faced the issue.  See Kaplan v. Code Blue Billing & Coding, Inc., Nos. 12-12011, 12-12376 and 12-12679, 2013 U.S. App. LEXIS 1433 (11th Cir. January 22, 2013); Solis v. Laurelbrook Sanitarium & Sch. Inc., 642 F.3d 518, 529 (6th Cir. 2011); McLaughlin v. Ensley, 877 F.2d 1207, 1209 (4th Cir. 1989); Donovan v. Am. Airlines, Inc., 686 F.2d 267, 272 (5th Cir. 1982); Reich v. Parker Fire Prot. Dist., 992 F.2d 1023, 1027 (10th Cir. 1993); Glatt v. Fox Searchlight Pictures, Inc., 11 Civ. 6784, 2013 WL 2495140, at *12 (S.D.N.Y. June 11, 2013); Wang v. Hearst Corp., 12 Civ. 793, 2012 U.S. Dist. LEXIS 97043 (S.D.N.Y. July 12, 2012).  See also Boyle v. Swann, Inc., 13 Civ. 00645 (W.D. Pa. 2013).

Additionally, national media attention has been focused on the issues raised by these cases.  See, e.g., Steven Greenhouse, Former Intern Sues Hearst Over Unpaid Work and Hopes to Create a Class Action, N.Y. TIMES, February 1, 2012; Talk of the Nation, Will Work for Free? The Future of the Unpaid Internship, NATIONAL PUBLIC RADIO, June 19, 2013, http://www.npr.org/2013/06/19/193526906/will-work-for-free-the-future-of-the-unpaid-internship;  Katie J.M. Baker, Interns Go Out of Vogue at Conde Nast, NEWSWEEK, (Oct. 24, 2013,  6:25  PM),  http://www.newsweek.com/conde-nast-would-rather-abandon-unpaid-labor-pay-interns-840.  Indeed, even though this Court has yet to issue a single substantive decision, the current action has already received significant national media notice.  See Eriq Gardner,

---

[7] As the plaintiff-petitioners noted in their petition for certiorari, the question of whether student interns are entitled to minimum wage/overtime implicates two current Circuit splits.  First, the Circuits disagree over whether an "economic realities," "primary benefit," or "totality of the circumstances" test should be applied in determining whether an intern or extern falls within an FLSA exception.  Second, there is a Circuit split as to the deference, if any, owed to the DOL's six-factor test for determining whether an intern or extern is exempt from the FLSA protections guaranteed to an "employee."  See Kaplan v. Code Blue Billing & Coding Inc. et al., No. 13-179, 2013 U.S. Briefs 179 (August 7, 2013).

*Warner Music Hit With Class Action Lawsuit Over Interns*, BILLBOARD.BIZ (June 17, 2013, 6:25 PM), http://www.billboard.com/biz/articles/news/legal-and-management/1567145/warner-music-hit-with-class-action-lawsuit-over; Associated Press, *Warner, Atlantic Sued Over Unpaid Internships*, THE WALL STREET JOURNAL ONLINE (June 17, 2013, 6:06 PM), http://online.wsj.com/article/AP64b2d0c48d614c539f30e3a36efefd47.html; Christopher Zara, *Unpaid Intern Lawsuit Against Atlantic Records and Warner Music Group Tests Legality of Music Industry Internships*, INTERNATIONAL BUSINESS TIMES (June 17, 2013, 10:20 AM), http://www.ibtimes.com/unpaid-intern-lawsuit-against-atlantic-records-warner-music-group-tests-legality-music-industry.

Finally, as a practical matter, if Plaintiff is correct that the class is entitled to wages because they were "employees," this will necessarily have significant implications for <u>all</u> of Defendants' internship programs, including those involving interns in other states.  This matter is thus unquestionably a case with national ramifications.

**2.  The Putative Class Overlaps in Significant Part
With a Second Putative Class in a Collective Action
<u>Before This Court, Whose Claims are Governed by Federal Law</u>**

Plaintiff's counsel has filed a second action in this Court, in which the putative class overlaps significantly with the one in this action:  <u>Grant v. Warner Music Group Corp.</u>, 13 Civ. 4449 (the "<u>Grant</u> Action").  Indeed, the only factor differentiating the two classes is the applicable statute of limitations, as the factual allegations in both matters are virtually identical. Specifically, the <u>Grant</u> Action seeks damages on behalf of students whose internships began in June 2010.  Defendants' records indicate that of the 2,741 putative class members in this action, 1,458 interned during the 2010 Summer Semester or later (more than 53%) (<u>see</u> Ex. A to the Declaration of Ioannis Fagkridas).  A majority of the putative class members in this action are thus potential claimants in the <u>Grant</u> Action, brought exclusively under the FLSA (and all

putative <u>Grant</u> class members who interned at Defendants' New York offices are also putative class members in this action).  Consequently, while New York law would apply to the claims in this action, application of federal law will also be necessary to determine fully the rights of more than half of the class members.  This fact counsels in favor of this Court's retention of jurisdiction, even if the law of no other state is directly implicated.  <u>See</u> 28 U.S.C. § 1332(d)(3)(B).

### 3. The Claims Have Been Pleaded in a Manner <u>Which Seeks to Avoid Federal Jurisdiction</u>

CAFA embodies a "strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant." <u>Hart v. FedEx Ground Package Sys. Inc.</u>, 457 F.3d 675, 681 (7th Cir. 2006).  The case before this Court is an interstate class action, and it was properly removed.  Moreover, courts are empowered to exercise CAFA jurisdiction to discourage the forum shopping in which Plaintiff plainly seeks to engage.  28 U.S.C. § 1332(d)(3)(C).  His counsel very deliberately filed this action first in state court, and the <u>Grant</u> Action barely a week later in federal court, rather than simply filing a hybrid NYLL/FLSA case in this Court at the outset (thereby avoiding the need for two separate actions against the same defendants, filed by the same counsel, alleging the same facts and injuries).  Plaintiff is not shy about Plaintiff's preference to be in state court, where he believes he is more likely to get his putative class certified: "New York appellate courts have repeatedly held that wage-and-hour actions, such as this one, are particularly amenable to class certification…." while "it cannot be denied that the United States Supreme Court has, of late, been bent on diminishing the usefulness of Rule 23" (<u>see</u> Pltf's Brief at pp.11-12) (internal punctuation omitted).  However, CAFA is explicitly intended to protect against such forum shopping.  <u>See</u> 28 U.S.C. § 1332(d)(3)(E).

Plaintiff asserts somewhat disingenuously that "claims brought under the FLSA cannot be brought as a class action" (Pltf's Brief at p.12).  However, such claims may be brought as opt-in collective actions, which is precisely what Plaintiff's counsel purports to do in the Grant Action, whose very caption represents that it is brought "on behalf of other persons similarly situated" to the named plaintiff therein.  And there is no legal obstacle to the filing of a dual FLSA collective action and state labor law class action on behalf of overlapping bodies of putative class members.  See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 247-49 (2d Cir. 2011) ("[W]e agree with the Seventh Circuit that… the 'conflict' between the opt-in procedure under the FLSA and the opt-out procedure under Rule 23 is not a proper reason to decline jurisdiction").  See also Knepper v. Rite Aid Corp., 675 F.3d 249, 259 (3d Cir. 2012) ("We agree that the plain text of [29 U.S.C.] § 216(b) provides no support for the concept of inherent incompatibility" of FLSA collective actions and state labor law class actions); Ervin v. OS Rest. Servs., Inc., 632 F.3d 971, 976-79 (7th Cir. 2011) ("There is ample evidence that a combined action is consistent with the regime Congress has established in the FLSA").  Plaintiff and Plaintiff's counsel very deliberately chose to force Defendants to respond to two duplicative actions in different fora, squandering judicial resources in the process, and they should not now be rewarded by a grant of their remand motion.

### 4.    A Significant Portion of The Putative Class is Comprised of Citizens of a Second State

28 U.S.C. § 1332(d)(3)(E) requires the Court to consider whether the number of citizens of the State in which the action was originally filed is substantially larger than the number of citizens from any other State and the citizenship of the other members of the proposed class is dispersed among a substantial number of States.  In this case, while Defendants' records do indicate that a narrow majority (just under 55%) of the putative class members are New York

citizens, at least one other state has a significant interest in this matter.   Specifically, 525 prospective class members (more than 19% of the class) are New Jersey citizens.   Consequently, due to the fact that a significant number of class members are citizens of this second state, this factor counsels in favor of federal jurisdiction.

**5.     Plaintiff's Counsel Filed A Collective Action Asserting The Same or Similar Claims on Behalf of Many of the Same Persons Ten Days After Filing The Current Action**

Finally, as detailed above, while no class actions have been filed by the same persons within the three-year period preceding the filing of this matter, a collective action was filed by Plaintiff's counsel purporting to represent an overlapping class barely a week after the current action was filed.[8]   The Grant Action alleges essentially the same facts, differing only in the length of the proposed class period and the statutory basis for relief.   That Plaintiff's counsel filed the current case first, by a matter of days, is no accident.   Indeed, the "interest of justice" exception to CAFA is less likely to have application where a class action asserting the same or similar factual allegations was filed within the preceding three years.[9]   Plaintiff filed this action first in time and the Grant action only days later precisely so that Plaintiff could argue that there had been no such prior action filed.   Plaintiff and his counsel should not be permitted to avoid federal jurisdiction through such disingenuous acts.

---

[8] Additionally, numerous actions have been filed within this Circuit asserting "similar claims" on behalf of other classes of interns or externs.   See Glatt v. Fox Searchlight Pictures, Inc., 11 Civ. 6784 (S.D.N.Y.) and Wang v. Hearst Corp., 12 Civ. 793 (S.D.N.Y.), both of which are currently pending before the Second Circuit as part of a consolidated appeal.   This fact further weighs in favor of this Court retaining jurisdiction.

[9] As Plaintiff notes, the Grant Action is not technically a class action, but it is hardly clear from the face of the CAFA statute that such collective opt-in actions are excluded from CAFA.   See 28 U.S.C. §1332(d)(1)(B) (defining "class action").   Indeed, any reading of the statute under which the fact that a second and related action was actually filed under a federal statute—in this case the FLSA—would permit Plaintiff to avoid federal jurisdiction would be nonsensical and would defeat the explicit legislative purpose of CAFA.

What is more, declining jurisdiction will unnecessarily expose the parties to duplicative processes, potentially result in inconsistent judgments, and waste judicial resources. Exercising jurisdiction, on the other hand, will have the salutary effects of facilitating judicial economy; conserving party resources; and promoting fundamental fairness. Indeed, this action is so interrelated with the Grant action—consisting as they do of an overlapping population of potential plaintiffs,[10] a near-identical set of factual and legal issues, and even the same set of law firms representing the parties—that any resistance on Plaintiff's part to federal jurisdiction over this action and its consolidation with the Grant matter can only be the product of procedural gamesmanship. In light of the fact that both actions allege that Defendants' interns are "employees" who should have been paid the applicable minimum wage for all hours "worked," that the applicable state and federal statutes define "employee" in virtually identical terms,[11] and that the defenses in both actions are similarly identical, no legitimate purpose can be served by requiring the parties to engage in unnecessarily duplicative and costly discovery in two fora. These factors, coupled with the fact that Plaintiff's claim is closely tied to questions of federal policy, compel the conclusion that this Court should retain jurisdiction over this controversy.[12]

---

[10] Critically, the plaintiffs in both actions (which were filed barely more than one week apart) purport to have filed their complaints on behalf of potential plaintiffs consisting of, in substantial part, an identical set former interns whose internships were in New York during the three-year period preceding commencement of the actions.

[11] Under the New York Labor Law, "Employee means any person employed for hire by an employer in any employment." N.Y. Labor L. § 190(2). Under the Fair Labor Standards Act, "the term employee means any individual employed by an employer." 29 U.S.C. § 203(e)(1).

[12] Cf., Kolari v. New York Presbyterian Hosp., 382 F. Supp. 2d 562, 575 (S.D.N.Y. 2005) (holding that federal court should exercise supplemental jurisdiction over remaining state law claim that was closely tied to federal policy).

## **CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiff's motion to remand.

Dated: New York, New York
       December 23, 2013

Respectfully submitted,

VEDDER PRICE P.C.

By: _Laura Sack_
     Laura Sack
     Lyle S. Zuckerman
     Michael J. Goettig

1633 Broadway, 47th Floor
New York, New York 10019
(212) 407-7700 (telephone)
lsack@vedderprice.com
lzuckerman@vedderprice.com
mgoettig@vedderprice.com
*Attorneys for Defendants*
*Warner Music Group Corp. and*
*Atlantic Recording Corporation*

19